HARRY E. DUFFY *v.* WOODCREST BUILDERS, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 2-613-2751M

138

Argued May 13—decided August 21, 1963

*Leo Niedelman,* of Bridgeport, for the defendant (appellant).

*Robert N. Hunziker,* of Bridgeport, for the plaintiff (appellee).

KOSICKI, J. The finding, which is not subject to correction, discloses the following facts: The defendant is a builder of dwelling houses in Fairfield. On July 10, 1956, the plaintiff and the defendant entered into an agreement for the purchase and sale of a house, to be constructed by the defendant on a lot owned by it on Woodside Circle, at a price of $34,000. The contract provided that the septic tank system serving the house should be constructed in conformity with plans and specifications supplied by the defendant and the regulations of the health department of Fairfield. The plans supplied by the defendant to the Fairfield health department called for the installation of leaching fields consisting of a trench 150 feet in length and 2 feet deep. For its proper functioning, the sewage disposal system reasonably required leaching fields of these dimen-

sions, and an installation meeting such specifications was a reasonable requirement of the Fairfield health department. A permit for the installation was issued by the health department in accordance with the defendant's application. The installation was undertaken by a subcontractor of the defendant. A certificate of occupancy was issued by the Fairfield building department on March 5, 1957. The plaintiff took title to the property on March 27, paid the consideration of $34,000, and entered into possession.

The following spring drainage water from the plaintiff's washing machine began to back up through the septic tank system into the cellar of the plaintiff's house. The plaintiff informed the defendant of this difficulty and the latter dug a dry well in an attempt to remedy the condition. There was no improvement following this attempt, and the defendant refused to do anything more, denying liability because more than a year had elapsed since delivery of possession. The plaintiff then consulted the Pierce Manufacturing Company, a contractor experienced in water and sewage work. The superintendent of the company inspected the premises, checked the health department records, observed that the installation as represented in the defendant's application was adequate and, to relieve the soil saturation, recommended the installation of a curtain drain along the periphery of the plaintiff's property for the purpose of intercepting surface water from the surrounding land. This was done at a reasonable cost of $685.55. The curtain drain did not remedy the situation. A representative of Pierce then excavated in three places along the line of the leaching trench as shown in defendant's application filed with the health department. He discovered that there were only 52 feet of leaching fields instead of the required 150 feet. Pierce then

installed the additional footage necessary to provide a total of 150 lineal feet, at a reasonable cost of $300. Thereafter, the plaintiff had no further drainage trouble.

We have disregarded the numerous paragraphs in the finding, the motion to correct, and the corresponding references in the assignment of errors concerning inspections, or lack of them, by the building and health departments and the circumstances surrounding the issuance of the various permits. The present action is for breach of contract by the defendant for failure to perform. It is no defense to this action that there may have been negligent inspection by those departments or no inspection at all. Furthermore, the application signed by the defendant, exhibit D, expressly provides: "No oversight or neglect of duty on the part of the Director of Health or Sanitarian shall legalize the construction, alteration or repair of any sewage system in a manner not in conformity with the provisions of the Sanitary Code of the Town of Fairfield, or State of Connecticut."

The defendant is willing to concede, as well it might, that a leaching field of fifty-two feet did not conform to the local regulations and that it was inadequate. The contract itself did not spell out the dimensions of the field; it did, however, provide that the sewage disposal system was to be "in accordance with the Fairfield Health Department." The plaintiff had the right to rely on the defendant's doing everything that was necessary to provide the plaintiff with an adequate sewage disposal system. The plaintiff's contract was for a completed house, built on land then owned by the defendant. It was not for the construction of a house for and under the direction or control of the plaintiff on his own land. The defendant knew or should have known of the soil and water conditions on its land.

"The law is clear that a contract includes not only what is expressly stated therein but also what is necessarily implied from the language used. *Rockwell* v. *New Departure Mfg. Co.*, 102 Conn. 255, 287 . . . ; 13 C.J. p. 558, § 521. No special form of words, but that the promise appears upon a fair interpretation, is the essential. 'Not only then may promises exist . . . where the language is in terms that of promise, but also where the agreement shows that the parties . . . have intended an obligation though they failed so to state in clear terms.' 2 Williston, Contracts, p. 1290, § 670. 'If it can be plainly seen from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect—in other words, if it is a necessary implication from the provisions of the instrument—the law will imply the obligation and enforce it.' 6 R.C.L. p. 856, § 244; *Lawler* v. *Murphy*, 58 Conn. 294, 311 . . . ." *Leventhal* v. *Stratford*, 121 Conn. 290, 295.

The main issue on this appeal is whether the trial court correctly applied the rule of damages. It is the defendant's contention that recovery by the plaintiff cannot extend beyond the reasonable cost of installing the additional leaching fields to bring the total to 150 feet. This cost the court found to be $300. As to the amount allowed for the curtain drain, the defendant claims that the drain was neither within the contemplation of the parties nor a necessary or natural consequence of the defendant's failure to perform.

The rule in cases such as this, in Connecticut and almost all, if not all, of the jurisdictions where the question has come up for review, is that the cost of completion or correction of the work rather than loss in property value affords the proper basis for

measuring damages resulting to the owner from the breach of a building or construction contract. Note, 123 A.L.R. 515, 520, § 2 (a). Our rule, which has remained uniform, was first stated in *Lee* v. *Harris,* 85 Conn. 212, 214: "The general rule regarding breaches of contract, whether relating to real or personal estate, is that the injured party shall recover that compensation which will leave him as well off as he would have been had the contract been fully performed. *Kidd* v. *McCormick,* 83 N.Y. 391. There is no unbending rule as to the evidence by which such compensation is to be determined. In some cases the sum which will furnish such compensation may properly be ascertained by evidence of the difference in the value of the property, upon which structures are to be placed or repairs are to be made, with and without such repairs or structures. But 'the object of the parties ought to be attained as nearly as possible; and that is, that the specific act agreed to be done should be performed. If the party omits to do what he stipulated, it is just, as a reasonable substitute, that he should pay the precise value of the thing which he contracted to do; and such value to be estimated at the time when the act in question should have been executed.' *Wells* v. *Abernethy,* 5 Conn. 222, 227. Such value may often properly be shown by proof of what it would cost to perform the omitted acts." See also *Sabo* v. *Strolis,* 148 Conn. 504, 506; *Bachman* v. *Fortuna,* 145 Conn. 191, 194; *Frederick Raff Co.* v. *Murphy,* 110 Conn. 234, 242; *Holland Furnace Co.* v. *DeZenzo,* 20 Conn. Sup. 341, 344. "If the established facts made out a breach of contract by the defendant, the plaintiff would be entitled to recover the damages that would arise naturally and generally from that breach, or such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract. *Cohn* v. *Norton,* 57 Conn. 480, 490. The measure

would be such compensation as would leave the plaintiff as well off as he would have been had the contract been fully performed. *Raff Co.* v. *Murphy,* 110 Conn. 234, 242; *Lee* v. *Harris,* 85 Conn. 212, 214. In the case of a defaulting building contractor, the situation is normally that of recovering the reasonable cost of getting the work done by another. *Blakeslee* v. *Holt,* 42 Conn. 226, 229." *Goldblatt* v. *Ferrigno,* 16 Conn. Sup. 506, 510.

Damages, in cases like the one before us, are not determined on the narrow basis urged by the defendant. The rule is that the party injured by a default in performance of a contract is entitled to "that compensation which will leave him as well off as he would have been had there been full performance." *Sabo* v. *Strolis,* supra, 506. The defendant constructed and sold to the plaintiff an expensive house. Impliedly, the contract included the undertaking on the part of the defendant that the facilities serving the house would be reasonably efficient and that the plaintiff should not undergo further outlay to correct or complete a faulty installation. Not only had the defendant failed to construct the sewage disposal system as agreed but, because of the defendant's misleading representations, it was difficult to ascertain the cause of the obvious malfunctioning of the system. The leaching trench was an underground installation, and the plaintiff's expert could reasonably rely on the defendant's statement without verifying it through exploratory excavation.

The plaintiff, demanding recovery for all his expenditures, relies on the rule of damages which prevails in cases of tort arising out of injuries to persons or property because of negligent performance or failure to perform a duty imposed by contract. Compensation for injury in such cases is granted because the injury is deemed to have been

within the contemplation of the parties to the contract and is the proximate result of the defective work or negligent nonperformance under a contract the very object of which is to prevent such injury. See *Barlow Bros.* v. *Lunny,* 102 Conn. 152, 155; *Stevens* v. *Yale,* 101 Conn. 683, 690. We do not consider this rule to be applicable here; nor do we need to resort to it in order to arrive at a just result. This case is one in contract, and the question, under the authorities cited above, beginning with the *Lee* case, is what compensation will leave the plaintiff as well off as he would have been had the defendant fully performed. The inquiry, then, is whether the defendant's breach, probably and naturally, made necessary all the expenditures incurred by the plaintiff in order to correct a defective condition on the premises caused by the defendant's breach of contract and its refusal to correct. This presents a question of fact. The trial court, upon credible evidence, found that the plaintiff, to make him whole, was entitled to recover for the cost to him of the curtain drain as well as the cost of completing the leaching field. We cannot hold, as a matter of law, that the conclusion of the court was incorrect.

There is no error.

In this opinion PRUYN and LEVINE, Js., concurred.