[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. INTRODUCTION.
On November 27, 2000, the Court filed a Memorandum of Decision in the above-entitled case finding liability on the Second and Third Counts of the Counterclaim. At the request of the parties, supplemental hearings were held on December 21, 2000, and January 23, 2001, on the issue of CT Page 1460 what, if any, punitive damages and attorney's fees should be awarded on the Third Count — which, as the November 27, 2000 Memorandum of Decision explains, involves a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b. At these supplemental hearings, the Counterclaim plaintiff (i.e. the defendant, Richard Fish) additionally claimed an award of prejudgment interest pursuant to Conn. Gen. Stat. § 37-3a. These issues will now be addressed in turn.
II. PUNITIVE DAMAGES.
Under Conn. Gen. Stat. § 42-110g(a), "[t]he court may, in its discretion, award punitive damages." Exercising its statutory discretion, the Court determines that punitive damages are appropriate here. This is a case involving trickery and deceit. As explained in the November 27, 2000 Memorandum of Decision, Urich's conduct was a variation of a classic "switch" technique, whereby a consumer is promised (and pays for) one thing and is given quite another. Trickery and deceit have long been considered more reprehensible than negligence, and punitive damages may be awarded as long as they are proportional to the spirit of the offense. BMW of North America, Inc. v. Gore, 517 U.S. 559, 576 (1996). Fish argues that the switched items in question here were a relatively small proportion of the total purchase price of the yacht. While that observation is true, it amounts to another way of saying that the punitive damages should be proportional to the actual offending conduct. In this case, as the November 27, 2000 Memorandum of Decision explains, the total value of the missing items is $17,025.04. This amount provides an obvious reference point for the calculation of punitive damages. Although this figure could no doubt be increased by prejudgment interest, the Court, in its discretion, declines to do so. An award of $17,000 in punitive damages is an appropriate sanction here.
III. ATTORNEY'S FEES.
Under Conn. Gen. Stat. § 42-110g(d), "the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorney's fees based on the work reasonably performed by an attorney and not on the amount of recovery." The evidence establishes that Fish's reasonable attorney's fees here amount to $19,719.40. This amount includes both the reasonable attorney's fees expended in connection with the trial of the CUTPA Counterclaim on the remand and the reasonable attorney's fees expended in connection with that portion of the initial trial before DeMayo, J. and the appeal to the Appellate Court devoted to the Counterclaim. (It does not include attorney's fees devoted to the trial and appeal of Urich's Complaint; of necessity it doubtless overlaps some attorney's fees devoted to the breach of contract claim CT Page 1461 asserted in the Second Count of the Counterclaim, but the CUTPA and breach of contract claims here are inextricably related.)
Because Fish has now prevailed on his CUTPA Counterclaim, he is entitled to attorney's fees based on all of the work reasonably performed by his attorney on that claim. In this case, that work reasonably included the initial trial and appeal. See Murphy v. Lynn, 118 F.3d 938,952 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998). It is important to note in this regard, that the new trial was necessitated because of an error of the original trial judge not fairly attributable to Fish. Consequently, the Court awards reasonable attorney's fees of $19,719.40, Although Urich challenges the inclusion of attorney's fees attributable to prior proceedings, he does not challenge the accuracy of this calculation.
IV. PREJUDGMENT INTEREST.
Conn. Gen. Stat. § 37-3a provides that, "interest at the rate often per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." "It is clear that Connecticut case law establishes that prejudgment interest is to be awarded if, in the discretion of the trier of fact, equitable considerations deem that it is warranted. . . . If interest is due, it is an element of damages." Paulus v. Lasala,56 Conn. App. 139, 147, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928,746 A.2d 789 (2000). The Supreme Court has recently described the analysis that the trial court must make with respect to this decision:
 The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. . . . Before awarding interest, the trial court must ascertain whether the defendant has wrongfully detained money damages due the plaintiff. . . . The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule. . . .
 A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated. CT Page 1462
Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708,734-35, 687 A.2d 506 (1997). (Internal quotation marks and citations omitted.)
Using the Blakeslee analysis, the Court first determines that Urich has wrongfully detained money due Fish. Sec. 37-3a has been "applied to breach of contract claims where the partial performance of one party caused the other party specific damages." Foley v. Huntington Co.,42 Conn. App. 712, 740, 682 A.2d 1026, cert. denied, 239 Conn. 931,683 A.2d 397 (1996). Sabo v. Strolis, 148 Conn. 504, 172 A.2d 609
(1961), is a good example. Sabo involved a contractor who agreed to construct a house and left it incomplete. The plaintiff was not only entitled to compensatory damages that would leave him as well off as he would have been had there been full performance but was additionally entitled to statutory interest from the time of the breach. Id. at 506. Similarly, in this case, Fish is not only entitled to compensatory damages but to statutory interest as well.
The evidence in this case establishes that the date of the breach in this case was June 6, 1993. Interest on the sum of $17,025.04 is awarded from that date to this. Fish accurately calculates that the amount of this interest is $12,626.87. Urich does not challenge the accuracy of this calculation.
Urich contends that no prejudgment interest should be awarded because, in rendering judgment for Urich on the Complaint in the first trial, DeMayo, J. determined that Fish owed Urich a $20,000 balance on the purchase price of the yacht. See Urich v. Fish, 58 Conn. App. 176, 178,753 A.2d 372 (2000). Urich reasons that, since this sum exceeds the $17,025.04 that he owes Fish on the Counterclaim, Fish has actually come out ahead of the game and has not actually been deprived of money. The problem with this analysis is that, given the remand of the Appellate Court in this case, only the Counterclaim is now before the trial court. The jurisdiction of the trial court is limited by that remand. Patron v.Konover, 43 Conn. App. 645, 649-53, 685 A.2d 1133 (1996), cert denied,240 Conn. 911, 690 A.2d 400 (1997). Consequently, only damages on the Counterclaim may be awarded. For the reasons explained above, an award of interest on the Counterclaim here is appropriate.
V. CONCLUSION.
For the reasons set forth above, judgment shall enter on the Counterclaim as follows:
On the Second Count of the Counterclaim, the Counterclaim plaintiff CT Page 1463 (Fish) is awarded $17,025.04 in compensatory damages plus $12,626.87 in prejudgment interest. The total damages awarded on the Second Count are $29,651.91.
On the Third Count of the Counterclaim, the Counterclaim plaintiff (Fish) is awarded punitive damages of $17,000 and reasonable attorney's fees of $19,719.40.
Judgment shall therefore enter in favor of the Counterclaim plaintiff (Fish) in the total amount of $66,371.31 on the Counterclaim.
Jon C. Blue Judge of the Superior Court